**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH W. FRANTZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-111 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge.

## I. INTRODUCTION

Joseph W. Frantz ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* and § 1381 *et seq*. Plaintiff filed his applications on March 21, 2006 alleging disability since January 1, 2001 due to a history of heart attacks, herniated discs in his lower back and asthma (AR 127-138; 160).[1] His applications were denied and he requested and was granted an administrative hearing before an administrative law judge ("ALJ") (AR 93-98; 104-109; 115). Following a hearing held on October 14, 2008 (AR 21-43), the ALJ concluded, in a written decision dated October 31, 2008, that the Plaintiff was not entitled to a period of disability, DIB or SSI under the Act (AR 12-20). Plaintiff's request for review by the Appeals Council was denied (AR 1-4), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). Plaintiff filed his complaint in this Court on May 6, 2010, challenging the ALJ's decision. Presently pending before the Court are the parties' cross-motions for summary

---

[1] References to the administrative record [ECF No. 6], will be designated by the citation "(AR ___)".

1

judgment. For the reasons that follow, the Plaintiff's motion will be denied and the Commissioner's motion will be granted.

## II. BACKGROUND

Plaintiff was 49 years old on the date of the ALJ's decision and has a limited education (AR 22). He has past work experience as security guard, laborer, janitor and cook (AR 161). The medical evidence reveals that the Plaintiff has a history of myocardial infarctions, coronary artery disease, hyperlipidemia, spondylosis of the lumbar spine with herniated discs, asthma and psoriasis. Although the Plaintiff has alleged disability since January 2001, the administrative record contains no treatment records before April 2004.

The relevant medical records reveal that the Plaintiff was treated at the Titusville Area Hospital on several occasions for his asthma complaints since April 2004. On August 13, 2004 he was seen in the emergency room for an asthma attack and was diagnosed with chronic obstructive pulmonary disease ("COPD") and prescribed an Albuterol inhaler and Prednisone (AR 251). His chest x-ray was reported as normal, and he was advised to quit smoking and return to the hospital if his symptoms worsened (AR 248; 251).

Plaintiff began treatment at the Conneaut Valley Health Center on September 10, 2004 under the direction of Frank McLaughlin, D.O. (AR 324).[2] Plaintiff was seen by Kelli Tautin, C.R.N.P. and reported that he had a heart attack at age 39, and relayed his previous emergency room treatments for his asthma (AR 324). He complained of trouble breathing, and stated that he had run out of his asthma medications three weeks prior (AR 324). He reported that he had stopped taking multiple heart medications, as well as the medication for his high cholesterol, due to a lack of insurance (AR 324). His physical examination was unremarkable and he was diagnosed with asthma, hyperlipidemia, fatigue and malaise (AR 323). Ms. Tautin ordered blood work and a chest x-ray (AR 323). Plaintiff was to return in one week for follow up (AR 323).

---

[2] Dr. McLaughlin is not related to the undersigned.

Plaintiff returned to Ms. Tautin on September 30, 2004 and reported that he felt well and that his asthma symptoms had improved with medication (AR 322). He complained of low back pain radiating down into his right leg exacerbated by extended walking (AR 322). Ms. Tautin reported that the Plaintiff was pleasant, alert, oriented and cooperative during the examination (AR 322). On physical examination, Ms. Tautin reported that the Plaintiff's muscle strength was +5/5 and equal in both his upper and lower extremities (AR 322). He exhibited full flexion of his back, but she found some mild tenderness to palpation in the low lumbosacral area (AR 322). He was assessed with asthma, hyperlipidemia and back pain (AR 322). Ms. Tautin prescribed Lipitor for his elevated cholesterol levels, and Daypro for his complaints of back pain, and ordered a lumbar x-ray (AR 322).

On February 9, 2005 the Plaintiff presented to the emergency room for treatment and was diagnosed with acute bronchitis and prescribed Prednisone and Robitussin AC (AR 231; 241). On June 5, 2005 he complained of difficulty breathing with symptoms of wheezing, and he was assessed with asthma and prescribed Prednisone (AR 221; 230).

Plaintiff returned to the Conneaut Valley Health Center on September 2, 2005, and it was noted that he had not been seen since September 2004 (AR 321). He complained of low back pain with increased intensity (AR 321). Ms. Tautin reported that the Plaintiff was very pleasant, alert, oriented and cooperative (AR 321). Plaintiff's physical examination was unremarkable, except some psoriatic lesions were noted on both arms and hands (AR 321). He was assessed with asthma, psoriasis and hyperlipidemia (AR 321). Ms. Tautin ordered diagnostic studies, refilled his medications, and stressed the importance of regular appointments (AR 321).

An x-ray of the Plaintiff's spine dated September 13, 2005 showed Grade I spondylolisthesis at the L4-5 level and mild degenerative disc disease at the L1-2, L4-5 and L5-S1 levels (AR 192).

Plaintiff returned to Ms. Tautin on October 11, 2005 and complained of increased back pain radiating down his right leg with some paresthesias (AR 320). Plaintiff reported that he wanted to work but was "truly miserable" while trying to work a full day (AR 320). He claimed back pain prevented him from working and presented disability forms to Ms. Tautin for

3

completion (AR 320). On physical examination, Ms. Tautin found the Plaintiff's muscle strength was +5/5 and equal throughout (AR 320). She reported tenderness in the Plaintiff's lumbar spine that radiated down into his right hip (AR 320). Plaintiff also had increased pain with extension and flexion of his back with an inability to laterally bend due to pain (AR 320). Plaintiff was assessed with low back pain, prescribed Sulindac and Flexeril, and a lumbar MRI was ordered (AR 320).

An MRI of the Plaintiff's lumbar spine dated October 14, 2005 revealed a Grade I anterolisthesis at L4 with a broad based central disc herniation at the L5-S1 level (AR 190).

When seen by Ms. Tautin on November 11, 2005, the Plaintiff reported that his medications had been mildly effective, but he continued to have significant pain depending upon the weather and his activities (AR 317). Based upon the results of his MRI, the Plaintiff was scheduled for an appointment with Dr. Macielak, but could not be seen until February 2006 (AR 317). Ms. Tautin reported that the Plaintiff was very pleasant, alert, oriented and cooperative with the exam (AR 317). His muscle strength was +5/5 and equal throughout, but she reported that he had lumbar spine discomfort radiating down into his right leg with limited flexion and extension (AR 317). He was assessed with back pain and asthma and continued on medication (AR 317)

On January 15, 2006, the Plaintiff presented to the emergency room complaining of chest pain and sought treatment for a possible acute myocardial infarction (AR 198; 219). He was diagnosed with a probable ongoing acute myocardial infarction and responded with conservative treatment (AR 218). It was recommended that he undergo a heart catheterization for a possible angioplasty, and he was transferred to St. Vincent Hospital to undergo further testing (AR 218).

Plaintiff was treated by Ross Peterson, M.D. at St. Vincent Hospital following his transfer (AR 280-282). An echocardiography report dated January 16, 2006 showed that his left ventricular ejection fraction was moderately reduced 30 to 35 percent (AR 270-271). He underwent a cardiac catheterization and was found to have blockages, but he was unable to undergo angioplasty (AR 318). Plaintiff was discharged on January 19, 2006 and instructed to take aspirin, Plavix, Vasotec and Lipitor, and was referred to a cardiac rehabilitation program

(AR 262-263). He was instructed to stop smoking and follow a low cholesterol diet (AR 262). Plaintiff was restricted from lifting over ten pounds for one week and from driving for one week, and he was to follow up with his family physician in two weeks (AR 263).

Plaintiff returned to Ms. Tautin on March 3, 2006 and reported that he was doing well following his heart attack (AR 316). He indicated that he was following with a cardiologist, had not had any further chest pains, and was taking his medications as ordered (AR 316). Ms. Tautin noted she was "trying to get him off cigarettes" and had prescribed Wellbutrin, but the Plaintiff had not started taking it due to some questions (AR 316). Plaintiff voiced no complaints, his physical examination was unremarkable, and he was very pleasant, alert, oriented and cooperative (AR 316). Ms. Tautin diagnosed him with asthma, hyperlipidemia, and coronary artery disease (AR 316). Lab tests were ordered and following discussion, the Plaintiff indicated he would begin the Wellbutrin for smoking cessation (AR 316).

Plaintiff returned to Ms. Tautin on July 14, 2006 (AR 332). He indicated that he smoked less with the Wellbutrin and Ms. Tautin noted a "marked improvement" in his efforts (AR 332). He complained of weather related asthma symptoms (AR 332). His physical examination was unremarkable, although some faint scattered expiratory wheezes were noted that cleared when the Plaintiff coughed (AR 332). He was diagnosed with post MI, asthma, hyperlipidemia and tobacco dependence (AR 332). He was continued on medications (AR 332).

On September 19, 2006, Abu Ali, M.D., a non-examining state agency reviewing physician, reviewed the medical evidence of record and opined that the Plaintiff could perform sedentary work involving only occasional climbing, balancing, stooping, kneeling, crouching and crawling, and avoiding environmental hazards (AR 334-336).[3] Dr. Ali summarized the medical

---

[3] Sedentary work is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

5

findings, noting that the medical evidence established that the Plaintiff had asthma, a prior myocardial infarction, low back pain and obesity (AR 338). Dr. Ali observed however, that medications had been successful in controlling the Plaintiff's symptoms, and that while he described limited daily activities, such limitations were not consistent with the other evidence in the record (AR 338).

An echocardiogram conducted on October 16, 2006 revealed that the Plaintiff's left ventricular ejection fraction was moderately reduced at 30 to 40 percent (AR 353). He reported to Ms. Tautin on October 27, 2006 that he was feeling well overall, had no specific complaints, and his physical examination was unremarkable (AR 352). He was continued on his medication regimen (AR 352).

When seen by Ms. Tautin on January 29, 2007, the Plaintiff reported that he was doing well (AR 351). He denied suffering from any shortness of breath or chest pains and voiced no concerns (AR 351). Ms. Tautin reported that the Plaintiff was very pleasant, alert, oriented and cooperative, and his physical examination was unremarkable (AR 351). He was assessed with coronary artery disease, back pain and asthma, and he was continued on his medication regimen (AR 351).

On April 30, 2007, the Plaintiff complained of significant back discomfort and requested medication (AR 349). On physical examination, Ms. Tautin found tenderness to palpation of the lumbar spine with limited flexion and extension (AR 349). He was diagnosed with coronary artery disease, asthma, hyperlipidemia, disc herniation and back pain (AR 349). Ms. Tautin added Flexeril and Darvocet to his medication regimen (AR 349).

An MRI conducted on May 31, 2007 revealed that, other than some minimal disc herniation at L1-2 on the left, there had been "no real change" from the MRI study of October 14, 2005 (AR 347-348).

Treatment notes from the Conneaut Valley Health Center dated October 4, 2007 reveal that the Plaintiff was doing well except for a cough and chest congestion (AR 377). Ms. Tautin reported the Plaintiff was very pleasant, alert, oriented and cooperative on examination (AR 377). No complaints were noted relative to the Plaintiff's back problems (AR 377). He was

diagnosed with bronchitis, coronary artery disease and hyperlipidemia and prescribed medication (AR 377).

Plaintiff was evaluated by Rasel M. Rana, an orthopedic specialist, as well as Dr. James Macielak, on January 31, 2008 pursuant to the request of Dr. McLaughlin (AR 358-359). He reported a history of three heart attacks, and daily back pain which was exacerbated by walking (AR 358). He claimed the pain radiated down his right lower extremity with corresponding numbness and weakness, but he was unable to specify the areas of numbness (AR 358). Plaintiff indicated that his pain medications had been discontinued following his heart attack (AR 358).

On physical examination, Dr. Rana reported that the Plaintiff was alert and oriented and in no acute distress (AR 358). Dr. Rana found the Plaintiff had a scaly rash on extensive surfaces of his body due to psoriasis (AR 358). Plaintiff was able to forward flex to approximately 80 degrees and was able to extend his trunk approximately 30 degrees but reportedly experienced pain (AR 358). He exhibited a positive straight leg raise test on the right (AR 358). His motor and sensory examination was normal (AR 358). Dr. Rana ordered x-rays which showed loss of disc height and Grade I spondylolisthesis at L4-5 (AR 359). Dr. Rana also reviewed the Plaintiff's MRI report dated May 31, 2007 (AR 359). He diagnosed the Plaintiff with spondylosis of the lumbar spine, Grade I spondylolisthesis at L4-5 and a herniated disc at L5-S1 (AR 359). Dr. Rana and Dr. Macielak recommended conservative treatment for the Plaintiff's back pain, prescribing pain medication and physical therapy (AR 359).

Plaintiff was seen by Brian Kazienko, M.D., at Meadville Cardiology Associates on February 8, 2008 (AR 361-362). Plaintiff reported a history of two heart attacks, one in 2000 and one in 2006 (AR 361). He denied experiencing any chest pain, trouble breathing, palpitations or syncope (AR 361). His physical examination was unremarkable and he was assessed with coronary artery disease (AR 361-362). An echocardiogram was ordered in order to determine if the Plaintiff was a candidate for an implantable cardio defibrillator, and it was recommended that he stop smoking (AR 362).

An echocardiogram conducted on February 11, 2008, revealed that the Plaintiff's ejection fraction had improved to 40 to 45 percent (AR 363). Because his ejection fraction was greater than 35 percent, he was not eligible for an implantable cardio defibrillator (AR 362).

Plaintiff returned to Dr. Rana for follow up on March 20, 2008 who noted that after 11 sessions of physical therapy, the Plaintiff reported no improvement in his back pain (AR 365). He claimed his pain was still a 7 or 8 out of 10, and radiated into his right lower extremity (AR 365). He denied experiencing any weakness, numbness or tingling (AR 365). On physical examination, Dr. Rana reported the Plaintiff was alert, oriented and in no acute distress (AR 365). Dr. Rana found no evidence of scoliosis, no significant tenderness of the Plaintiff's back on palpation and his neurovascular examination was intact (AR 365). He was assessed with Grade I spondylosisthesis at L4-5, herniated disc at L5-S1 and lumbar spondylosis (AR 365). Plaintiff was to be scheduled for an epidural injection and was prescribed Darvocet (AR 365).

Plaintiff was seen by Dr. McLaughlin on April 10, 2008 (AR 368). At that time, the Plaintiff complained of some mild shortness of breath (AR 368). Plaintiff had no other complaints and his physical examination was unremarkable (AR 368). Dr. McLaughlin assessed him with congestive heart failure, depression, psoriasis and chronic obstructive pulmonary disease (AR 368). He was continued on his current medication regimen and was advised to stop smoking (AR 368). A stress test was not ordered since the Plaintiff was not experiencing any cardiac symptoms (AR 368).

Finally, on September 11, 2008, Ms. Tautin completed a medical source statement opining that the Plaintiff could perform a range of light work with a sit/stand option, but was limited in his ability to push/pull with his lower extremities and was limited in his postural activities due to his back impairment, and was limited with respect to environmental exposures due to his severe asthma (AR 378-380).[4] Ms. Tautin further opined that the Plaintiff would

---

[4] Light work is defined in the regulations as follows:

> Light work involves lifting not more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of

8

likely miss two out of five days per week, be unable to complete a full day of work two out of five days per week, and would require four to eight unscheduled breaks during the day due to his impairments (AR 380). This medical source statement was countersigned by Dr. McLaughlin on October 10, 2008 (AR 380).

Plaintiff and Samuel Adelman, a vocational expert, testified at the hearing held by the ALJ on October 14, 2008 (AR 21-43). Plaintiff testified that he had not worked since January 2001 (AR 26). He indicated that he was treated by Ms. Tautin, the nurse practitioner at the Conneaut Valley Health Center, and had only been seen by Dr. McLaughlin on one occasion (AR 27). Plaintiff stated that he was seen by Dr. McLaughlin on October 10, 2008, and Dr. McLaughlin "check[ed] [his] heart" but did not discuss the Plaintiff's physical limitations (AR 26). Plaintiff stated that he suffered from back pain that radiated down into his right leg, and also had left shoulder pain (AR 30-31).

Plaintiff testified that he did not attend any social activities or sporting events and that his girlfriend did all the shopping (AR 29). He claimed he was unable to bend over and tie his shoes (AR 31). Plaintiff stated that he drove only twice a month and was limited in his driving ability because he had trouble turning his head (AR 31-32). He claimed that after he drove he suffered pain in his back, neck and shoulder and was fatigued (AR 33). He further claimed to suffer from fatigue throughout the day which allegedly required him to lie down twice a day for one to two hours (AR 33). Plaintiff indicated that he could only walk about "a half a block" before experiencing "bad pains" in his back and neck (AR 31). He was able to stand for a maximum of twenty minutes (AR 34). He was able to sit for fifteen minutes before needing to change positions (AR 35). Plaintiff testified that he had not undergone epidural injection therapy for his back pain because of his blood thinner medication (AR 34). He noted that while his heart problems were being successfully managed with medication, the medication caused fatigue (AR

---

> performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

34). Finally, he testified that while he suffered from depression and a dislike of crowds, he was able to "get along with people" (AR 38). Despite his alleged depression, he denied any suicidal thoughts or isolating himself from others (AR 39).

The ALJ asked the vocational expert to assume an individual of the same age, education and work experience as the Plaintiff, who was able to perform sedentary work with a sit/stand option, who was must avoid all ladders, ropes and scaffolds; who could not use any right foot controls; who could perform no work above shoulder level on the left and no repetitive reaching on the left (AR 39). Such individual must further avoid environmental exposures and work place hazards; could have no vibration to his right leg; and was precluded from occupational driving (AR 40). The vocational expert testified that such an individual could perform the sedentary positions of a cashier, surveillance systems monitor and telephone solicitor (AR 40).

Following the hearing, the ALJ issued a written decision which found that the Plaintiff was not entitled to a period of disability, DIB or SSI within the meaning of the Act (AR 12-20). His request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 1-4). He subsequently filed this action.

### III.     STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 1097, 229 (1938)); *see also Richardson v. Parales*, 402 U.S. 389, 401 (1971); *Ventura v. Shalala*, 55 F.3d 900, 901 (3rd Cir. 1995). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson*, 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3rd Cir. 1995). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson*, 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D.Pa. 1998); *see also*

*Monsour Medical Center v. Heckler*, 806 F.2d 1185, 90-91 (3rd Cir. 1986) ("even where this court acting *de novo* might have reached a different conclusion … so long as the agency's factfinding is supported by substantial evidence, reviewing courts lack power to reverse either those findings or the reasonable regulatory interpretations that an agency manifests in the course of making such findings."). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

## IV. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) with 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that the Plaintiff met the disability insured status requirements of the Act through June 30, 2007 (AR 14). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen*, 482 U.S. at 141. If it is not, the

11

> claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. Id. If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ concluded that the Plaintiff had the following severe impairments: coronary artery disease and hyperlipidemia with a history of multiple myocardial infarctions; back pain with spondylolisthesis and herniated disc; obesity; asthma; and psoriasis; but determined at step three that he did not meet a listing (AR 14-16). The ALJ found that he was able to perform work at the sedentary exertional level with a sit/stand option, but that he must avoid all ladders, ropes and scaffolds; could not use foot controls on the right; could not perform work above shoulder level on the left; could not perform repetitive reaching on the left; must avoid exposure to cold, heat, wetness and humidity; could not tolerate vibration to his right leg; and was precluded from occupational driving and workplace hazards (AR 16). At the final step, the ALJ concluded that the Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 19-20). The ALJ additionally determined that the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible (AR 16). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first argues that the ALJ erred by not fully developing the record during the administrative proceedings with respect to his alleged depression. *See* Plaintiff's Brief pp. 10-11. Plaintiff contends that because he testified to suffering from depression, irritability and a dislike of crowds, the ALJ should have requested additional medical evidence, ordered a consultative examination, or held another hearing concerning his alleged mental impairment. *See* Plaintiff's Brief pp. 10-11.

As an initial matter, the Plaintiff has not identified any particular medical evidence that would have been relevant to the ALJ's disability determination, much less demonstrated any prejudice resulting from the ALJ's failure in this regard. *See e.g. Lanza v. Astrue*, 2009 WL

1147911 at *5 (W.D.Pa. 2009) ("Plaintiff has failed to offer any additional medical evidence showing that she was prejudiced by the ALJ's failure to secure further medical evidence from Plaintiff's treating physicians. Nor has she offered any other evidence that the ALJ failed to secure relevant evidence. As such, she has not met her burden of showing that the ALJ failed to properly develop the record.") (citing *Massey v. Astrue*, 2008 WL 4425853 at *3 W.D.Pa. 2008)).

Moreover, the decision to order a consultative examination is only necessary where the claimant has shown that the record as developed is not sufficient for the ALJ to make a determination. *Thompson v. Halter*, 45 Fed. Appx. 146, 149 (3rd Cir. 2008) (citing 20 C.F.R. §§ 404.1517, 416.917); *Lomison v. Astrue*, 2010 WL 5830489 at *4 (M.D.Pa. 1010). That is not the case here. The evidence before the ALJ was sufficient to support his conclusion that the Plaintiff's claimed symptoms were not reasonably related to a medically determinable impairment (AR 15). The ALJ examined the evidence of record and observed that the Plaintiff had not undergone any inpatient care, partial hospitalizations or emergency treatment for his alleged depression (AR 14-15). He also noted that the record was devoid of any evidence of suicidal ideation, homicidal ideation or psychosis associated with decompensation (AR 14-15). The ALJ further observed that the Plaintiff took no psychotropic medications, except for Wellbutrin in March of 2006, which had been prescribed for smoking cessation only (AR 15). Finally, he noted that the Plaintiff had not alleged disability on the basis of a mental impairment, and he was consistently described as pleasant, alert, oriented, and cooperative during office visits (AR 15). In sum, I reject the Plaintiff's contention that further development of the record was necessary relative to his alleged mental impairment.

Plaintiff next argues that the ALJ improperly rejected and failed to give controlling weight to the report of his treating physician, Dr. McLaughlin. "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a long period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3rd Cir. 1999)) (citations omitted); *see also*

13

*Adorno v. Shalala*, 40 F.3d 43, 47 (3rd Cir. 1994). In choosing to reject a treating physician's opinion, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3rd Cir. 1988) (holding that "the medical judgment of a treating physician can be rejected only on the basis of contradictory medical evidence" not "simply by having the administrative law judge make a different judgment"); *Moffat v. Astrue*, 2010 WL 3896444 at *6 (W.D.Pa. 2010) ("It is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical evidence."). In addition, a treating source's medical opinion concerning the nature and severity of the claimant's alleged impairments will be given controlling weight if the Commissioner finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). Finally, where an ALJ chooses to reject the opinion of a treating physician, he must adequately explain in the record his reason for doing so. *See Sykes v. Apfel*, 228 F.3d 259, 266 (3rd Cir. 2000) ("Where the Secretary is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence.").

Here, Dr. McLaughlin found that the Plaintiff could engage in light work which allowed him to periodically alternate between sitting and standing, with reduced limitations in pushing and pulling of the lower extremities, and with a reduced range of postural activities due to his back impairment (AR 378-380). Dr. McLaughlin further found that the Plaintiff was limited in his ability to be exposed to dust, humidity/wetness, fumes, odors, chemicals and gases due to his severe asthma (AR 380). Finally, Dr. McLaughlin stated that the Plaintiff would likely call off work two days out of a five day work week, be unable to complete a full work day two days per week, and would require four to eight unscheduled breaks per day lasting in excess of five to ten minutes (AR 380).

In fashioning the Plaintiff's residual functional capacity ("RFC"),[5] the only portion of Dr. McLaughlin's report discredited by the ALJ was his opinion relative to the frequency of missed work and the need for unscheduled breaks. In this regard, the ALJ stated:

> While Dr. McLaughlin is a treating physician with [a] long-term treatment relationship, the opinion cannot be given great weight because it is internally inconsistent and unsupported by the physical examination findings. In particular, Dr. McLaughlin initially indicates that the claimant is capable of a rather wide range of work activities, with lifting up to twenty pounds and standing and walking for up to six hours in a regular day. This assessment is generally inconsistent with the subsequent, extremely limiting restrictions as to frequency of missed work and the need for multiple extended breaks. More importantly, however, the opinion is not supported by the physical examination findings, which have consistently shown no neurological damage (intact sensation, reflexes, and motor power), and no evidence of congestive heart failure, and in particular, no cyanosis, clubbing, or edema in the extremities. His lungs are clear, his heart rate regular, and his echocardiogram showed significant improvement in ejection fraction. Overall, there is no evidence to support the need for multiple breaks or frequent absences. The opinion has been considered and given only some weight.
>
> The State agency physician concluded that the claimant could complete a range of sedentary work with some additional environmental restrictions (Exhibit 6F). This opinion has also been carefully considered. Although this physician was non-examining, and therefore the opinion does not as a general matter deserve as much weight as those of examining or treating psychiatrists, State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. In this case, the opinion is given greater weight than that of the treating physician because the opinion is supported by the evidence, is consistent with the record as a whole, and considered the complete case record (See SSR 96-6p). In particular, the opinion notes the claimant's positive response to medication management following his myocardial infarction, and moreover, notes the largely normal physical examination.

---

[5] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). In making this determination, the ALJ must consider all the evidence before him. *Burnett*, 220 F.3d at 121.

(AR 18-19).

As set forth above, the ALJ found that Dr. McLaughlin's opinions as to the likely frequency of missed work and the need for multiple extended breaks were inconsistent with his conclusion that the Plaintiff was capable of wide range of exertional work activities (AR 18). Dr. McLaughlin's medical source statement provides that his opinion was based on what "the individual can still do <u>on an on-going, consistent basis (8-hour day, 5 days a week)</u> despite his/her impairment(s)." (AR 378) (emphasis in original). *See Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (where evidence is conflicting and internally contradictory, the ALJ may determine that the opinions of the treating physician are not controlling).

The ALJ further found that Dr. McLaughlin's opinions were unsupported by the Plaintiff's physical examination findings (AR 18). The ALJ observed that the physical examination findings consistently demonstrated intact sensation, reflexes and motor power, and an absence of neurological damage (AR 18). The ALJ further noted that there was no evidence of congestive heart failure, and no cyanosis, clubbing or edema was found in the Plaintiff's lower extremities (AR 18). The examination findings revealed that the Plaintiff's lungs were clear, his heart rate was regular, and his echocardiogram showed a significant improvement in his ejection fraction. Dr. Rana and Dr. Macielak, the Plaintiff's treating orthopedic specialists, reported minimal abnormalities on physical examination and when last seen by Dr. Rana in 2008, the Plaintiff was in no distress and his physical examination was unremarkable (AR 365). Dr. Kazienko, the Plaintiff's treating cardiologist, reported that his latest physical examination in 2008 was unremarkable, and as noted by the ALJ, his ejection fraction had in fact improved since 2006 (AR 362-363). In short, the ALJ found that the record was devoid of any evidence supporting the need for frequent absences or multiple unscheduled breaks.[6]

---

[6] I reject the Plaintiff's argument that the ALJ had a duty to re-contact Dr. McLaughlin pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e) to resolve the "ambiguity he perceived" in reviewing the medical record. *See* Plaintiff's Brief p. 12. Similar to the duty with respect to ordering a consultative examination, the regulations provide that a treating physician will only be re-contacted when the evidence received from the physician is inadequate to reach a determination. Here, the ALJ did not find Dr. McLaughlin's report inadequate; rather, he found the report internally inconsistent and unsupported by his physical examination findings.

Finally, the ALJ found Dr. McLaughlin's opinions conflicted with that of Dr. Ali, the state agency reviewing physician, who concluded that the Plaintiff could perform a range of sedentary work with some environmental restrictions (AR 18). It is well settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones*, 954 F.2d at 129 (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence); *Harris v. Astrue*, 2009 WL 2342112 at *7 (E.D.Pa. 2009) (when consistent with the record, ALJ is entitled to rely on state agency physician's opinion even if contradicted by opinions of treating physician).

For the reasons previously discussed, I find that substantial evidence supports the ALJ's decision not to afford controlling weight to Dr. McLaughlin's opinions.

## V. CONCLUSION

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH W. FRANTZ,              )
                               )
    Plaintiff,             )    Civil Action No. 10-111 Erie
                               )
v.                             )
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social Security,)
                               )
    Defendant.             )

## **ORDER**

AND NOW, this 7th day of April, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [ECF. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Joseph W. Frantz.

The clerk is directed to mark the case closed.

                                              s/ Sean J. McLaughlin
                                                United States District Judge

cm:    All parties of record